**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ISADORE J. RUTLEDGE,

     *Plaintiff,*                    CASE NO. 2:14-CV-14468-DML-PTM

*v.*

COMMISSIONER OF              DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,          MAGISTRATE JUDGE PATRICIA T. MORRIS

     *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION**

     In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the case be dismissed.

**II.**     **REPORT**

     **A.**     **Introduction and Procedural History**

     This case was referred to the undersigned to review the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). *See* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 12, 13.)

Isadore Rutledge was 49 years old at the time of the administrative hearing on February 28, 2013. (Transcript, Doc. 7 at 52.) Plaintiff worked as a laborer/part maintenance helper for the City of Detroit at the time he was injured on September 12, 2009. (Tr. at 51-52.) Plaintiff worked in that position for eight years and also worked as a janitor for 18 years, and as an apartment maintenance worker for two years. (Tr. at 167.) Plaintiff filed his claim for DIB on November 22, 2011, alleging that he became unable to work on September 28, 2009. (Tr. at 122.) The claim was denied at the initial administrative stage. (Tr. at 85.) In denying Plaintiff's claims, the Commissioner considered discogenic and degenerative disorders of the back, and essential hypertension. (*Id.*) On February 28, 2013, Plaintiff appeared before Administrative Law Judge ("ALJ") Richard Sasena, who considered the application for benefits de novo. (Tr. at 47-76.) In a decision dated July 17, 2013, the ALJ found that Plaintiff was not disabled. (Tr. at 27-46.)

On September 23, 2014, the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-7.) On November 22, 2014, Plaintiff filed the instant suit, seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.    Standard of Review

The Social Security Administration has promulgated the following rules for the administration of disability benefits. *See* 20 C.F.R. §§ 401-422. First, a state agency, acting under the authority and supervision of the Administration, usually makes the initial

determination of whether a person is disabled. 20 C.F.R. § 404.1503; *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). If denied, the claimant may seek review of the state's decision through the Administration's three-stage review process. *Bowen*, 482 U.S. at 142. In the first step of this process, the state's disability determination is reconsidered de novo by the state agency. *Id.* Next the claimant has the right to a hearing before an ALJ. *Id.* Finally, "the claimant may seek review by the Appeals Council." *Id.* Only after the Commissioner has issued a final administrative decision that is unfavorable may the claimant file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decisions under 42 U.S.C. § 405(g). This is a limited review where we "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

### C.    The ALJ's Five-Step Sequential Analysis

The "[c]laimant bears the burden of proving his [or her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). While, in general, the claimant "is responsible for providing the evidence" to make a residual functional

capacity ("RFC") assessment, before a determination of not disabled is made, the Commissioner is "responsible for developing [a claimant's] complete medical history, including arranging for a consultative examination[] if necessary." 20 C.F.R. § 404.1545(a)(3).

Title II, 42 U.S.C. §§ 401-434, provides DIB to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI, 42 U.S.C. §§ 1381-1385, provides Supplemental Security Income ("SSI") to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

4

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by" an impairment that precludes performance of past relevant work. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (cited with approval in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007)). If the analysis reaches step five, the burden shifts to the Commissioner to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(a)(4)(g)); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

### D.    The ALJ's Findings

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at Step One that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since September 12, 2009, the alleged

onset date. (Tr. at 32.) At Step Two, he found that Plaintiff's conditions of "degenerative disc disease and lumbar radiculopathy were "severe" within the meaning of 20 C.F.R. § 404.1520 and § 416.920. (*Id.*) At Step Three, he found that Plaintiff did not have an impairment or combination of impairments that met or was the medical equivalent of a listing in the regulations. (Tr. at 32-33.) At Step Four, he found that Plaintiff could perform a limited range of light work and was unable to perform any past relevant work. (Tr. at 33-40.) He also found that Plaintiff was 46 years old on the alleged disability onset date, putting him into the "younger individual" category. (Tr. at 40.) At Step Five the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a significant number of jobs in the national economy, and therefore he was not disabled. (Tr. at 40-42.)

###       E.       Administrative Record

###       1.       Medical History

On September 12, 2009, Plaintiff was injured at work. (Tr. at 51-52.) Plaintiff was "driving a Dooley vehicle, which apparently is a small vehicle to pick up trash on some grounds. He states he was at a stop when he was struck by a 91-year-old man driving a Taurus from behind at approximately 5-15 miles per hour. He had a sudden onset of low back pain." (Tr. at 237.) Plaintiff has sought treatment for resulting back pain with the Midwest Medical Center (Tr. at 220-77,) the Oakland Regional Hospital (Tr. at 278-95,) Dr. Martin Kornblum, M.D. (Tr. at 296-305,) Michigan Head and Spine Institute (Tr. at 306-26,) the Botsford Clinic (Tr. at 327-79, 430-39,) Dr. Matthew Citron, D.O. (Tr. at

380-91,) Dr. Steven Kohl, D.O. (Tr. at 392-429, 440-43, 455-73,) Dr. Kovan (Tr. at 447-54,) and Dr. Mohammed Osman, M.D.. (Tr. at 474-90.)

On September 12, 2009, Plaintiff was diagnosed with "[l]umbosacral strain[,]" "physical therapy tech treatment was given" and Plaintiff was to "remain[] on light work until seen here on September 21, 2009." (Tr. at 241.) X-rays of Plaintiff's lumbar spine were "negative" showing "no significant bone or joint abnormalities. Vertebral body height and alignment is normal. The intervertebral disc spaces and facet joints are well maintained." (Tr. at 274.)

Dr. Gary Davis restricted Plaintiff to "[n]o lifting over 25 lbs[,]" "[n]o repetitive motions/Awkward positions" and "push and pull as tolerated" between September 21-28. (Tr. at 222.)  On September 29, 2009, two weeks after his accident, Plaintiff was diagnosed with a lumbar sprain and was restricted to "[n]o lifting over 30 lbs" and "[n]o repetitive motions/Awkward positions." (Tr. at 220-21, 235.) Dr. Zielinski noted that Plaintiff was "slightly improved" and recommended Plaintiff use Tiger Balm, an over-the-counter medication but also continued his prescription for Flexeril. (Tr. at 235.) Plaintiff was told to "return as needed only." (Tr. at 221.)

On January 26, 2010, Dr. Kornblum, orthopedic spine surgeon, noted that he had reviewed x-rays of Plaintiff's thoracic and lumbar spine which he opined "shows good alignment. No gross instability, fracture, or pathologic process." (Tr. at 300.)

On March 18, 2010, Dr. Osman noted that Plaintiff had "tenderness over the lower back" but that his "straight leg raising test is within normal limits[,]" there was "[n]o evidence of sensory changes" and he exhibited "[i]ntact peripheral pulsations." (Tr. at

279, 486.) Dr. Osman indicated that he would "proceed with lumbar epidural steroidal injection with bilateral medial branch block." (*Id*.) Plaintiff underwent lumbar steroid injections on March 25, April 8, April 19, and August 19, 2010. (Tr. at 280, 286, 290, 477, 487, 489.)

On August 24, 2010, Dr. Kornblum reviewed x-rays of Plaintiff's lumbar spine and stated that Plaintiff "has got slight loss of lordosis. Otherwise, a pretty good looking lumbar spine." (Tr. at 297.) Dr. Kornblum diagnosed lumbar radiculopathy with discogenic pain. (*Id*.)

On November 7, 2009, an MRI of Plaintiff's lumbar spine showed "[h]erniated disk at L1-2 and L2-3" and "[m]ild diffuse disk displacement and facet hypertrophy at L5-S1." (Tr. at 302.)

An MRI of the lumbar spine taken on June 10, 2011, showed "[n]o acute process" but did show "[m]ild diffuse disk displacement at L1-2 and L2-3" and noted that "[w]hen compared with the prior study from November 7, 2009, there has been no significant change." (Tr. at 317, 319.)

On July 8, 2011, Dr. Johnson, of the Michigan Head and Spine Institute, noted that an "MRI scan of the lumbar spine from 2011 was reviewed and shows evidence of some mild disc displacement with facet hypertrophy" and that "[t]here has been no significant change compared to his 11/07/09 study." (Tr. at 309.) Dr. Johnson further stated that Plaintiff "does have disc herniations at L1-L2 and L2-L3" but that "[f]lexion-extension views of his lumbar spine were reviewed and show no evidence of abnormal motion." (*Id*.) Dr. Johnson opined that "[i]n my review of his MRI scan, I do not feel that surgery

8

would be of any benefit at this point" and "recommended that he continue with conservative treatment" including "rehabilitative therapies." (Tr. at 310.) Dr. Johnson found "no reason to follow him any further at this point." (*Id.*)

Plaintiff sought treatment with Dr. Kohl on October 25, 2011 for a physical examination. (Tr. at 330-31.) He was diagnosed with hypertension. (Tr. at 344.) A chest x-ray taken on that day based on symptoms of dyspnea was "[n]ormal[.]" (Tr. at 352, 422.) On November 9, 2011, Dr. Kohl diagnosed hypertriglyceridemia, hypertension and vitamin D deficiency. (Tr. at 396.) On December 23, 2011, Dr. Kohl diagnosed insomnia, right ankle arthritis and "[m]ild intermittent asthma, controlled." (Tr. at 359, 393.) On that same day, x-rays of Plaintiff's right ankle showed "[o]rthopedic fixation of old fractures[.]" (Tr. at 364.) On October 31, 2011, an echocardiogram showed normal results. (Tr. at 408-10.)

In 2012, Dr. Kohl completed a disability form which opined that Plaintiff could sit 3 hours at one time and 3 hours total in an 8 hour workday, stand for 35 minutes at one time, and for 5 hours total in an 8 hour workday, walk for 30 minutes at one time or 1 mile and for 2 hours total in an 8 hour workday, that he is unable to bend, twist, squat or carry, but could lift, push, and pull 10 pounds occasionally, that he needs a sit/stand option every 30-45 minutes, and that he could perform fine finger manipulation for 8 hours a day. (Tr. at 440-41.) Dr. Kohl listed Plaintiff's history of lumbar disc herniation as the reason for the limitations and commented that "[t]he above history was obtained by asking p[atien]t questions about his previous work injury." (Tr. at 441.)

An MRI of the lumbar spine taken on December 26, 2012 showed "[n]o definitive evidence for frank disc herniation at any lumbar vertebral body level." (Tr. at 453.)

Plaintiff began seeing Dr. Kovan, D.O. in December of 2012. (Tr. at 447-50.) On January 22, 2013, Dr. Kovan noted that Plaintiff "is 80 to 90% better with sacroiliac injection" and that an "EMG was normal as was the MRI of the back." (Tr. at 447.) Dr. Kovan also noted that Plaintiff's strength was 5/5 in all areas tested and that Plaintiff has "pain in the sacroiliac, otherwise, nonfocal exam." (*Id.*)

### 2.    Adult Function Report

Plaintiff indicated that he has no problem with personal care, he makes his own microwaveable meals, he takes out small or light garbage bags, he goes outside most days, he is able to walk and ride in a car, he shops in stores for about 30 minutes at a time, and he has no difficulty handling finances. (Tr. at 185-87.) His hobbies include going to church, watching television, and board games, and he indicated he does these things daily and does them "pretty good." (Tr. at 188.)

### 3.    Plaintiff's Testimony at Administrative Hearing

At the administrative hearing, Plaintiff testified that he has not worked since his accident on September 12, 2009, because of pain and restrictions, *i.e.*, that he cannot lift over 10 pounds, and that he cannot "stand in prolonged periods, bend, twist, and kneel." (Tr. at 52.)  Plaintiff indicated that his back bothers him and he has weakness in his left leg. (*Id.*) Plaintiff received worker's compensation in 2012 in the amount of $75,000 and he testified that he applied for and received unemployment compensation from October or November of 2009 through sometime in 2011. (Tr. at 53-54.)

Plaintiff testified that he does some chores around the house such as laundry, taking out small trash bags, getting the mail, and fixing small meals. (Tr. at 55-56.) Plaintiff also goes to the store and to the post office. (Tr. at 56-57.) Plaintiff naps for an hour or two per day and he has trouble sleeping at night. (Tr. at 57-58.) Plaintiff uses prescription muscle relaxers and he uses a hot and cold therapy machine for his back pain. (Tr. at 62.) Plaintiff was also receiving epidural shots for pain. (Tr. at 65.) Plaintiff stated that he can stand for 30-40 minutes, can walk 5-6 blocks, and can lift "10 pounds, maybe a little more." (Tr. at 62-63.) Plaintiff's new hobby is using the computer. (Tr. at 68.) Plaintiff does not use a cane, sometimes has trouble with stairs if there are too many of them, but he can climb the stairs to his second floor apartment. (Tr. at 69-70.)

### 4.   Vocational Expert Testimony at Administrative Hearing

The vocational expert ("VE") testified as follows at the administrative hearing. (Tr. at 70-75.) She responded that her testimony was consistent with the Dictionary of Occupational Titles ("DOT") except for the sit/stand option which is not addressed in the DOT. (Tr. at 75.) The ALJ asked her to assume a hypothetical individual with Plaintiff's background, who could perform light work with occasional climbing, balancing, stooping, crouching, and crawling. (Tr. at 73.) The VE testified that such a person could perform the 2,500 counter attendant jobs, and 1,500 lobby attendant jobs available in Southeastern Michigan. (Tr. at 73-74.) When asked to include the need for a sit/stand option every 30 minutes, the VE responded that such a person could perform the 3,500 general office clerk jobs, and the 1,500 information clerk jobs available in the region. (Tr. at 74.) When asked to reduce the exertional level to sedentary, the VE responded that

1,200 information clerk and 2,500 general office clerk jobs would be available in the region. (*Id*.)

### F.      Governing Law and Analysis

#### 1.      Legal Standard

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work. (Tr. at 33-40.) The regulations define light work as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.      Substantial Evidence

In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745

12

F.2d 383, 387 (6th Cir. 1984). A reviewing court must consider the evidence in the record as a whole, including any evidence that might subtract from the weight of the Commissioner's factual findings. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his [or her] written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without

interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (quoting *Mullen*, 800 F.2d at 545).

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform light work, given the nature of his limitations. (Doc. 10 at 12-21.) Specifically, Plaintiff contends that since the ALJ found that Plaintiff could stand "for only 30 minutes at a time" and because "this limitation would significantly reduce plaintiff's capacity to engage in light work," the ALJ's RFC findings were in error. (Doc. 10 at 14-15.) Plaintiff also argues that the VE testimony "noted only two jobs, not three as is common practice" and that such a low number of jobs are insufficient. (Doc. 10 at 15.) Plaintiff also argues that the RFC is not supported by substantial evidence because Dr. Kohl's opinion was the only functional assessment, and his assessment showed more limitations than those found by the ALJ. (Doc. 10 at 16-17.) Finally, Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence because he improperly relied on several factors: activities of daily living, that Plaintiff's treatment was conservative in nature, that Plaintiff took a vacation, and that Plaintiff received unemployment benefits. (Doc. 10 at 17-21.)

### a.   *Light work*

Plaintiff testified that he can stand for 30-40 minutes, can walk 5-6 blocks, and can lift "10 pounds, maybe a little more." (Tr. at 62-63.) Plaintiff contends that a person who can only stand for 30 minutes is unable to do light work. However, case law has held that substantial evidence supports a determination that a person who could stand for only 30-40 minutes at a time could nonetheless perform light work. *Branon v. Comm'r of Soc.*

*Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (finding that an ALJ properly relied on a plaintiff's statement as to how long he could stand rather than physician who opined he could only maintain any position for twenty minutes).

### b.    VE testimony

Plaintiff contends that the VE's testimony is insufficient because the VE cited only two jobs rather than the more common practice of citing to three jobs that the hypothetical person could perform. This difference is not significant. The salient question is whether the VE testimony supports a finding that a significant numbers of jobs are available in the economy that Plaintiff could perform. Plaintiff also argues that the number of jobs cited by the VE was inadequate to show availability in the region. The VE testified that at the light exertional level there were 2,500 counter attendant jobs, and 1,500 lobby attendant jobs available in Southeastern Michigan. (Tr. at 73-74.) When asked to include the need for a sit/stand option every 30 minutes, the VE responded that such a person could perform 3,500 general office clerk jobs, and 1,500 information clerk jobs available in the region. (Tr. at 74.) When asked to reduce the exertional level to sedentary, the VE responded that 1,200 information clerk and 2,500 general office clerk jobs would be available in the region. (*Id.*) Thus the VE testified that the hypothetical person could perform a total of 4,000 light jobs, 5,000 light jobs with a sit/stand option, and 3,700 jobs at the sedentary level. These numbers are more than sufficient to show job availability. *Tidwell v. Barnhart*, 88 F. App'x 82, 85-86 (6th Cir. 2004) (citing cases holding that from 1,350 total jobs to 3,700 total jobs constituted significant numbers).

### c.    Dr. Kohl's opinion

15

Plaintiff also argues that the RFC is not supported by substantial evidence because Dr. Kohl's opinion was the only functional assessment, and his assessment showed more limitations than those found by the ALJ. (Doc. 10 at 16-17.) The ALJ asked the VE to assume a hypothetical individual with Plaintiff's background, who could perform light work with occasional climbing, balancing, stooping, crouching, and crawling, and who would need to exercise a sit/stand option every 30 minutes. (Tr. at 73-74.) Dr. Kohl opined that that Plaintiff could sit 3 hours at one time and 3 hours total in an 8 hour workday, stand for 35 minutes at one time, and for 5 hours total in an 8 hour workday, walk for 30 minutes at one time or 1 mile and for 2 hours total in an 8 hour workday, that he is unable to bend, twist, squat or carry, but could lift, push, and pull 10 pounds occasionally, that he needs a sit/stand option every 30-45 minutes, and that he could perform fine finger manipulation for 8 hours a day. (Tr. at 440-41.)  The ALJ's RFC findings are largely consistent with Dr. Kohl's opinion. For example, the ALJ incorporated the need for a sit/stand option. In addition, Dr. Kohl opined that Plaintiff had the ability to sit for 3 hours, walk for 2 hours and stand for 5 hours in an 8-hour workday, and such findings are not inconsistent with light work. *See* 20 C.F.R. § 404.1567(b). Finally, to the extent that the ALJ discounted Dr. Kohl's opinion, it was acceptable for him to do so. Dr. Kohl listed Plaintiff's lumbar herniated disc history as the reason for the limitations and commented that "[t]he above history was obtained by asking p[atien]t questions about his previous work injury." (Tr. at 441.) A physician's "notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' . . . An ALJ is

16

not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011) (quoting *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010)). "Otherwise, the hearing would be a useless exercise." *Id. See also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (noting that there was no medical opinion in "Dr. Killefer's pain-related statement . . . [because] it merely regurgitates Francis's self-described symptoms."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."). Therefore, I suggest that the ALJ's treatment of Dr. Kohl's opinion was proper.

### d.    Credibility factors considered

Plaintiff argues that the ALJ should not have focused on Plaintiff's ability to perform activities of daily living, nor should he have relied on the fact that Plaintiff's treatment was conservative, that he took a vacation, and that he received unemployment benefits. I suggest that none of these arguments undermine the ALJ's decision.

Activities of daily living are a required factor to be considered, 20 C.F.R. § 404.1529, and in this case, support the finding of non-disability. Plaintiff indicated that he has no problem with personal care, he makes his own microwaveable meals, he takes out small or light garbage bags, he goes outside most days, he is able to walk and ride in a car, he shops in stores for about 30 minutes at a time, and he has no difficulty handling finances. (Tr. at 185-87.) His hobbies include going to church, watching television, and

board games, and he indicated he does these things daily and does them "pretty good." (Tr. at 188.)  As to Plaintiff's conservative treatment, this is a recognized consideration that undermines the notion that Plaintiff suffers from disabling pain. *Norris v. Comm'r of Soc. Sec.,* 461 F. App'x 433, 438 (6th Cir. 2012) (ALJ findings that plaintiff's claim of disabling back pain was less than fully credible were supported by substantial evidence where plaintiff was never subjected to surgical intervention and he was able to care for his personal needs);  *Ashworth v. Sullivan*, 951 F.2d 348 (6th Cir. 1991) (holding that treatment of back pain with epidural steroid injections, mild medication, exercise, and a heating pad was conservative, and undercut plaintiff's complaints of pain).

As to Plaintiff taking vacation, an ALJ may consider a Plaintiff's ability to go on vacation as a factor in determining credibility. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). In addition, an ALJ may consider the inconsistency inherent in seeking and receiving unemployment benefits (which implies that plaintiff was able to work but unable to find work) during the same period that he alleges he is disabled and unable to work. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *5 (July 2, 1996); *Arnold v. Comm'r of Soc. Sec.*, No. 13013468, 2015 WL 477379, at *10 (E.D. Mich. Feb. 5, 2015), *citing Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Finally, I suggest that substantial evidence supports the ALJ's ultimate finding that Plaintiff was not disabled. Although Plaintiff suffered from back pain since his accident, there is simply no evidence that his condition or pain from that condition was disabling. Soon after the accident, Plaintiff was told to "remain[] on light work until seen here on September 21, 2009." (Tr. at 241.) X-rays of Plaintiff's lumbar spine were "negative"

showing "no significant bone or joint abnormalities. Vertebral body height and alignment is normal. The intervertebral disc spaces and facet joints are well maintained." (Tr. at 274.) Plaintiff's alter restrictions were even less strict two weeks after the accident: "[n]o lifting over 30 lbs" and "[n]o repetitive motions/Awkward positions." (Tr. at 220-21, 235.) On January 26, 2010, x-rays of Plaintiff's thoracic and lumbar spine which he opined "shows good alignment. No gross instability, fracture, or pathologic process." (Tr. at 300.) On August 24, 2010, x-rays of Plaintiff's lumbar spine showed Plaintiff "has got slight loss of lordosis. Otherwise, a pretty good looking lumbar spine." (Tr. at 297.) Later x-rays showed only "mild" issues (Tr. at 302, 318, 319,) and it was noted that "[w]hen compared with the prior study from November 7, 2009, there has been no significant change." (Tr. at 317, 319.) Dr. Johnson opined that "[i]n my review of his MRI scan, I do not feel that surgery would be of any benefit at this point" and "recommended that he continue with conservative treatment" including "rehabilitative therapies." (Tr. at 310.) ) An MRI of the lumbar spine taken on December 26, 2012 showed "[n]o definitive evidence for frank disc herniation at any lumbar vertebral body level." (Tr. at 453.) I therefore suggest that substantial evidence supports the ALJ's decision.

### G.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is supported by substantial evidence.

III.   <u>**REVIEW**</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 29, 2015                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge

## CERTIFICATION

    I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: September 29, 2015                    By s/Kristen Krawczyk
                                            Case Manager to Magistrate Judge Morris